| STATE OF NORTH CAROLINA | **GENERAL RELEASE AND** |
|---|---|
| NEW HANOVER COUNTY | **SETTLEMENT AGREEMENT** |

THIS GENERAL RELEASE AND SETTLEMENT AGREEMENT (the "Agreement") is made and entered into effective as of this __ day of January, 2022, by and among WENDY FARRIOR ("Plaintiff") and MADISON BOWEN, ARYA MURGUIA, PATRICE BENJAMIN, KENDALL FARRIOR, STEPHANIE PAGES, NICOLE EMERY, VENKITA WADDELL, JESSICA SMITH, KRISHANTA JONES, BRIAHNA COMARTIE, SHARON BELLAMY, DENISHA SIMMONS, KELLY LANTZ, HEATHER HINSON, and ANGEL GRANT (the "Collective Action Participants"), on the one hand, and ANTHONY L. STROUD ("Stroud"), DAIL BALLARD ("Ballard"), and CHILDREN'S LEARNING CENTER II OF WILMINGTON, INC ("CLC II" and, together with Stroud and Ballard, "Defendants"), on the other. Plaintiff, the Collective Action Participants, CLC II, and Defendants are each sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

A. Stroud and Ballard are the sole officers and shareholders of CLC II, a learning center business which ceased active operations in August of 2021. Stroud and Ballard were not actively involved in its day-to-day operations.

B. In August of 2021, the assets of CLC II and a related business (CLC I) were sold to a third party.

C. At or about the time of the closing of the sale, Plaintiff and various of the Collective Action Participants asserted that they had not been paid for overtime hours they worked on behalf of CLC II.

D. More particularly, Plaintiff and Collective Action Participants contended that they were promised "comp" time in consideration for time worked in excess of 40 hours per week, notwithstanding the fact that CLC II is a private-sector employer and "comp" time is prohibited in that context. One of the Collective Action Participants presented a spreadsheet indicating the number of hours of unpaid overtime each employee asserted.

E. Defendants dispute that Stroud, Ballard, or anyone acting with authority on behalf of CLC II ever instituted a comp-time-in-lieu-of-overtime policy, Defendants dispute that anyone acting with authority on behalf of CLC II ever instituted a comp-time-in-lieu-of-overtime policy, dispute that employees were permitted to work overtime, and in fact contend that employees were instructed not to work overtime due to decreased volume during the COVID-19 pandemic. Defendants also dispute Plaintiff and Collective Action Participants worked the hours they claim to have worked.

F.  In lieu of filing a complaint with the United States Department of Labor, Plaintiff commenced an action against Defendants in the Southern Division of the Eastern District of North Carolina with the filing of a Complaint on November 4, 2021 (File No. 7:21-CV-191) (the "Litigation").  In the Litigation, on her own behalf and on behalf of the Collective Action Members and "all others similarly situated," Plaintiff asserts claims for the recovery of unpaid wages, compensatory damages, liquidated damages, and attorney's fees under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-2.1 *et seq.*[1]

G.  Settlement discussions ensued.  Plaintiff presented Defendants with a new computation of overtime hours the Collective Action Participants claim and Defendants dispute its accuracy.

H.  A *bona fide* dispute exists among the Parties as to whether, and in what amount, CLC II is indebted to Plaintiff and the Collective Action Participants.

I.  The Parties agreed to convene a mediated settlement conference, at which time the Parties arrived at the terms of this Agreement, subject to the Court's approval.

J.  Plaintiff and the Collective Action Members have been represented in the Litigation by Andrew Hanley, who was licensed to practice in Texas in 1991 and has practiced in North Carolina since 1997, and Nathaniel R. Ulmer who has been licensed to practice in North Carolina since 2017.  Their partner, Norwood Blanchard (licensed since 1999) also assisted in the negotiations and mediation.  Hanley and Blanchard have considerable experience litigating employment claims, including wage-and-hour claims.

J.  By Plaintiff's calculation, the aggregate amount to be paid pursuant to this Agreement represents all of the back pay to which Plaintiff and the Collective Action Participants would be entitled, plus all attorney's fees, plus one-half of all claimed liquidated damages, were they wholly successful in the Litigation.

NOW, THEREFORE, in consideration of the foregoing recitals, mutual promises, covenants and agreements set forth in this Agreement, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

1.  <u>Payment to Plaintiff and the Collective Action Participants</u>.  CLC II has caused the total sum of $71,000.00 (the "<u>Settlement Amount</u>") to be deposited to the trust account of counsel for Plaintiff, in full satisfaction of any back pay, wages, liquidated damages, costs, attorney's fees, or other damages, debts, and obligations Plaintiff and the Collective Action Participants assert Defendants, or any of them, owe.  Upon the Court's approval of this Agreement, Plaintiff's counsel is authorized to disburse to itself in the amount of $16,366.14 in attorney's fees and $1,200.00 in costs the balance of the

---

[1] A separate breach of contract claim specific to only Collective Action Participants Lantz and Emery concerns the non-payment of paid time off, a mistake attributable to a clerical error.  CLC II has separately paid the full amount of accrued paid time claimed by each of these two employees.

Settlement Amount to Plaintiff, the Collective Action Participants, and Plaintiff's counsel such amounts as they may agree among themselves. Plaintiff's counsel will be responsible for the issuance of IRS Form 1099's to Plaintiff and each Collective Action Participant.

2. <u>Dismissal of Lawsuit</u>. Within seven (7) days after the Court's approval of this Agreement, Plaintiff, the Collective Action Participants, and CLC II shall file a Stipulation of Dismissal with Prejudice of the Litigation.

3. <u>No Admission of Liability</u>. Neither the payment of any sums nor the execution of this Agreement is to be construed or interpreted as an admission of liability, the same being expressly denied.

4. <u>Waiver and Release</u>. Except as necessary to enforce the terms of this Agreement, Plaintiff and the Collective Action Participants fully and forever release and discharge Defendants and their respective parent, subsidiary and affiliate entities, members, shareholders, officers, directors, managers, employees, agents, attorneys, insurers, representatives, successors, and assigns from any and all claims, actions, demands, obligations, agreements, causes of action, suits, costs and expenses, attorneys' fees, damages or liabilities of any kind, whether known or unknown. Without limitation this release includes any claims arising under any federal, state or local law relating to the payment of wages, including the Fair Labor Standards Act and the North Carolina Wage and Hour Act, common law claims for breach of contract, and any other claims which Plaintiff and the Collective Action Participants could have asserted in the Litigation.

5. <u>Fees and Costs</u>. Defendants shall bear their own attorney's fees and costs associated. All of Plaintiff and the Collective Action Participants' fees and costs shall be satisfied from the Settlement Amount.

6. <u>Acknowledgments</u>. PLAINTIFF AND THE COLLECTIVE ACTION PARTICIPANTS HAVE READ THIS ENTIRE RELEASE CAREFULLY. THEY FULLY UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS RELEASE. THEY AGREE THAT THIS RELEASE IS WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY THEM AND THAT IF THEY DO NOT UNDERSTAND ANY PART OF THIS RELEASE, THEY HAVE HAD A FULL OPPORTUNITY TO HAVE IT EXPLAINED TO THEM BY AN ATTORNEY. THEY SIGN THIS RELEASE KNOWINGLY AND VOLUNTARILY.

7. <u>Modification of Agreement</u>. No waiver or modification of this Agreement, or any covenant, condition or limitation herein contained, shall be valid unless in writing duly executed by the Parties.

8. <u>Assignment</u>. No Party may assign any rights or obligations under this Agreement without the prior written consent of the other.

9. <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of North Carolina.

10. <u>Severability</u>. All agreements and covenants contained herein are severable, and in the event any of them shall be held invalid by any competent court this Agreement shall be interpreted as if such invalid agreements and covenants were not contained herein.

11. <u>Binding Effect</u>. This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns.

12. <u>Entire Agreement</u>. This Agreement supersedes any and all other understandings and agreements, either oral or in writing, between the Parties hereto with respect to the subject matter hereof and constitutes the sole and only agreement between the Parties with respect to said subject matter. Each Party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any Party or by anyone acting on behalf of any Party, which are not embodied herein, and that no agreement, statement or promise not contained in this Agreement shall be valid or binding or of any force or effect.

13. <u>Headings</u>. The headings, titles, and subtitles herein are inserted for convenience or reference only and shall not control or affect the meaning or construction of any of the provisions hereof.

14. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. Electronically transmitted copies of the Parties' signatures shall have the same force and effect as original signatures.

15. <u>Requirement of Court Approval</u>. The Parties acknowledge that this Agreement shall be of no force and effect unless and until approved by the United States District Court for the Eastern District of North Carolina. In the event the Agreement is not approved, the Settlement Amount shall be returned to CLC II. The Parties agree that for purposes of seeking Court approval, the undisputed facts are set forth in the recitals above.

IN WITNESS WHEREOF, the Parties have hereunto set their hands and seals as of the day and year first above written, the corporate party acting through its duly authorized officer.

(SIGNATURE PAGES FOLLOW)